**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

QUINTELLE HARDY,

                             Plaintiff,                    9:17-cv-1382 (BKS/CFH)

v.

RANDOLPH ADAMS, individually, and NATHAN
HATFIELD, individually,

                             Defendants.

_____

**Appearances:**

_For Plaintiff:_
Brett H. Klein
Office of Brett H. Klein, Esq. PLLC
305 Broadway
Suite 600
New York, New York 10007

_For Defendants:_
Letitia James
Attorney General of the State of New York
David C. White
Assistant Attorney General, of Counsel
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Plaintiff Quintelle Hardy brought this 42 U.S.C. § 1983 action asserting an Eighth

Amendment claim against Defendant Randolph Adams for excessive force and an Eighth

Amendment claim against Nathan Hatfield for sexual abuse. (Dkt. No. 30.) The case proceeded

to a three-day trial held February 6, 2023, to February 8, 2023. The jury returned a verdict

finding in favor of Plaintiff on both claims. (Dkt. No. 86.) Presently before the Court is

Defendants' motion for a new trial or to vacate or remit the jury's damages awards pursuant to

Rule 59 of the Federal Rules of Civil Procedure or for judgment as a matter of law pursuant to

Rule 50(b) of the Federal Rules of Civil Procedure. (Dkt. No. 105.) The motion is fully briefed.

(Dkt. Nos. 114, 115, 118.) For the following reasons, Defendants' motion is granted in part and

denied in part.

## II.    BACKGROUND

After the close of Plaintiff's evidence at trial, Defendants moved for judgment as a matter

of law under Rule 50(a) of the Federal Rules of Civil Procedure, arguing that Plaintiff failed to

introduce evidence on which a reasonable jury could find that Plaintiff suffered cognizable

injuries. (Dkt. No. 105-2, at 415–16.) The Court reserved ruling on the motion, (*id.* at 416), and,

after the close of all evidence, submitted the case to the jury. The jury returned a verdict finding

that Plaintiff proved both of his claims. (Dkt. No. 86, at 2–3.) The jury awarded Plaintiff $15,000

in compensatory damages in connection with Plaintiff's excessive force claim against Defendant

Adams and $30,000 in compensatory damages in connection with Plaintiff's sexual abuse claim

against Defendant Hatfield. (*Id.*) The jury also indicated that Plaintiff was entitled to punitive

damages in connection with each claim. (*Id.*) Defendants moved to set aside the jury verdict

based on the admission of medical records. (Dkt. No. 105-2, at 589–90.) The trial then proceeded

to the punitive damages phase, during which Defendants put on evidence of their financial

conditions, and the parties made arguments regarding punitive damages. After deliberation, the

jury returned awards of $45,000 in punitive damages in connection with Plaintiff's excessive

force claim against Defendant Adams and $90,000 in punitive damages in connection with

Plaintiff's sexual abuse claim against Defendant Hatfield. (Dkt. No. 88, at 2.) On February 9,

2023, the Clerk of Court issued judgment in favor of Plaintiff. (Dkt. No. 89.) The instant motion followed.

## III.    DISCUSSION

### A.    Rule 59 Motion

#### 1.    Standard of Review

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may "grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Such reasons "includ[e] if the verdict is against the weight of the evidence," *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012), or "if substantial errors were made in admitting or excluding evidence," *Stampf v. Long Island R.R.*, 761 F.3d 192, 202 (2d Cir. 2014). But "[d]istrict courts enjoy substantial latitude in making evidentiary rulings," *id.* at 203, because district courts are in a "superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice," *United States v. Robinson*, 702 F.3d 22, 36 (2d Cir. 2012) (quoting *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010)). Therefore, a party is generally entitled to a new trial only where the "district court committed errors that were a 'clear abuse of discretion' [and] were 'clearly prejudicial to the outcome of the trial.'" *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17 (2d Cir. 1996)). "Where claimed error was not objected to contemporaneously, appellant faces an even heavier burden." *Id.* "Because the failure to object deprives the trial court of the opportunity to correct the error during trial," a new trial is appropriate where the court committed 'plain error' . . . that was 'so serious and flagrant that it goes to the very integrity of the trial.'" *Id.* (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998)). In determining whether to grant a new trial under Rule 59, the court must consider whether "the jury has reached a seriously erroneous result or [its] verdict is a

miscarriage of justice." *See Stampf*, 761 F.3d at 202 (alteration in original) (quoting *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005)). "A court considering a Rule 59 motion for a new trial must bear in mind . . . that the court should only grant such a motion when the jury's verdict is 'egregious.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (quoting *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)).

Under Rule 59, a court may also order "a new trial limited to damages" or, under the practice of remittitur, "condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *See Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442, 466 (S.D.N.Y. 2014) (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)). "The Second Circuit has identified 'two distinct kinds of cases' in which conditional remittitur is appropriate: (i) when the court discerns 'an error that caused the jury to include in the verdict a quantifiable amount that should be stricken' or (ii) when the award is 'intrinsically excessive' in the sense that no reasonable jury could have awarded the amount, whether or not the excessiveness can be attributed to 'a particular, quantifiable error.'" *Id.* (quoting *Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998)). A jury's verdict should be set aside as "'intrinsically excessive' only if 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Id.* (quoting *Kirsch*, 148 F.3d at 165). In general, "on a Rule 59 motion the court 'may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner.'" *Id.* (quoting *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014)). However, in determining whether the jury awarded excessive damages, the court must "view the evidence and draw all factual inferences in favor of [the verdict winner]' and . . . 'accord substantial deference to the jury's determination of factual

issues." *Dancy v. McGinley*, 843 F.3d 93, 99 (2d Cir. 2016) (quoting *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993)).

    **2.    Analysis**

        **a.    Testimony Regarding Office of Special Investigations Report**

Defendants argue that the Court improperly permitted cross-examination of Defendant Hatfield regarding an Office of Special Investigations ("OSI") report from an incident that involved Defendant Hatfield in 2021. (Dkt. No. 105-3, at 6–16.) Specifically, Defendants argue that (1) the Court should not have permitted examination with respect to the OSI report because the OSI report is not an adjudicatory finding by a judicial or quasi-judicial body; (2) such examination was impermissible under *United States v. Cedeño*, 644 F.3d 79 (2d Cir. 2011); (3) testimony regarding the OSI report should have been excluded under Rule 403 of the Federal Rules of Evidence; and (4) testimony regarding the OSI report violated Rule 404 of the Federal Rules of Evidence. (Dkt. No. 105-3, at 9–16.) Plaintiff argues that (1) whether a finding is judicial or quasi-judicial is not determinative; (2) permitting testimony related to the OSI report was within the Court's discretion under *Cedeño*; (3) permitting testimony related to the OSI report was not improper under Rule 403; and (4) the Court permitted testimony related to the OSI report under Rule 608, not Rule 404. (Dkt. No. 114, at 8–18.)

Under Rule 608(b), a court may, on cross-examination of a witness, allow inquiry as to specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b); *see also Cedeño*, 644 F.3d at 82. Rule 608(b) does not, however, allow admission of extrinsic evidence to prove specific instances of misconduct. *See Diggs v. Guynup*, 621 F. Supp. 3d 315, 321 (N.D.N.Y. 2022); *see also Hynes v. Coughlin*, 79 F.3d 285, 293 (2d Cir. 1996) ("Rule 608 gives the trial court discretion to permit cross-examination (but not extrinsic evidence) as to '[s]pecific instances of [the witness's]

conduct' if those instances will be 'probative of [the witness's character for] truthfulness or untruthfulness.'" (alterations in original) (quoting Fed. R. Evid. 608(b))).

At trial, Plaintiff elicited the following testimony from Defendant Hatfield on cross-examination without objection:

> Question:  Have you always told the truth about uses of force?
>
> Answer:  Yes.
>
> Question:  Have you ever denied using force on an inmate but have found by the Office of Special Investigation to have used force even though you said you didn't do it?
>
> Answer:  No.

(Dkt. No. 105-2, at 275). Plaintiff then sought to question Defendant Hatfield on cross-examination about the incident underlying the OSI report. (*Id.* at 275–76.) Defendants objected, and the Court directed the parties to go to sidebar. (*Id.*) There, Plaintiff explained that he sought testimony from Defendant Hatfield related to the OSI report because it was probative of Defendant Hatfield's character for truthfulness under Federal Rule of Evidence 608(b) and sought admission of the OSI report itself under Federal Rule of Evidence 404(b) as probative of a modus operandi or signature. (*Id.* at 278–83.) After a recess, during which Plaintiff provided a copy of the OSI report to the Court and defense counsel,[1] the Court reconvened out of the presence of the jury and heard further argument from each party. (*Id.* at 284–93.) The OSI report found that an allegation that Defendant Hatfield used unnecessary force in August 2021, which Defendant Hatfield had denied under oath, was substantiated. (*Id.* at 284; Dkt. No. 114-2, at 3, 5).[2] After considering the parties' arguments, the Court ruled that the OSI report itself was not

---

[1] Plaintiff first raised the OSI report at trial; defense counsel had not seen the report before Plaintiff sought to use it in cross-examination. (*Id.* at 277.)

[2] Pursuant to New York State Department of Corrections and Community Supervision ("DOCCS") directive, OSI is tasked with conducting "independent, fair, ethical, objective, and professional" investigations before issuing

admissible under Rule 404(b) and that any probative value of introducing the evidence of actual

bad acts as substantive evidence was substantially outweighed by the dangers of unfair prejudice

under Rule 403 but that Plaintiff could cross-examine Defendant Hatfield about his denials in the

OSI report under Rule 608(b) because it was "probative of whether [Defendant Hatfield] was

truthful in response to the investigation." (*Id.* at 278, 283, 286–87, 291.) In fact, this evidence

was probative not only of Defendant Hatfield's truthfulness in response to the OSI investigation;

following Defendant Hatfield's above-cited trial testimony that he had not denied a use of force

that OSI found substantiated, the evidence was probative of the truthfulness of Defendant

Hatfield's trial testimony. The parties have not addressed that issue. The Court has therefore

considered and rejected Defendants' arguments for why cross-examination under Rule 608(b)

was improper.

### i.    Judicial and Quasi-Judicial Findings

Defendants' first argument—that that Rule 608(b) allows cross-examination only into

"judicial or . . . quasi-judicial finding[s]," (Dkt. No. 105-3, at 9)—is unsupported. Defendants

cite no caselaw for that proposition, and in fact, courts within the Second Circuit routinely permit

cross-examination into findings that were not conducted by an "administrative, state, or federal

judge," (Dkt. No. 105-3, at 8). *See, e.g., Hynes*, 79 F.3d at 293 (discussing cases allowing, for

example, cross-examination into an attorney's disbarment and failure to disclose a prior arrest on

a bar application before concluding that questions related to a Workmen's Compensation Board

inquiry and a workplace suspension were permissible); *Gonzalez v. United States*, No. 12-cv-

5226, 2013 WL 4584794, 2013 U.S. Dist. LEXIS 123950 (S.D.N.Y. Aug. 29, 2013) (collecting

---

"findings," which can include a finding of a "substantiated allegation." (Dkt. No. 118-2, at 9.) A "substantiated allegation" is "[a]n allegation that was investigated and determined to have occurred . . . based upon the preponderance of the evidence." (*Id.*)

cases demonstrating that false statements may be the basis for questioning under Rule 608(b) "even where the statements occur outside of a formal court proceeding," including such contexts as submitting false statements in timesheets for employers and in applications for employment, apartments, driver's licenses, loans, and credit cards), *report and recommendation adopted* 2013 WL 5289793, 2013 U.S. Dist. LEXIS 134303 (S.D.N.Y. Sept. 19, 2013); *Lombardo v. Stone*, No. 99-cv-4603, 2002 WL 113913, at *8, 2002 U.S. Dist. LEXIS 1267, at *24 (S.D.N.Y. Jan. 29, 2002) (permitting cross-examination regarding a witness's proffer of information to a New York State Office of Mental Health "Special Investigator" because "[the witness's] proffer of false information to the Special Investigator . . . clearly reflects her character for untruthfulness). Indeed, Second Circuit caselaw makes clear that whether a statement was made "under oath in a judicial proceeding or was made in less formal context" is but one of numerous non-dispositive factors for a court to consider in determining whether to permit cross-examination under Rule 608(b). *See Cedeño*, 644 F.3d at 83.

Moreover, Defendants' attempt to distinguish the cases put forth by Plaintiff at trial is unavailing. As to *Gonzalez v. United States*, 2013 WL 4584794, 2013 U.S. Dist. LEXIS 123950, and *Gonzalez v. United States*, No. 12-cv-5226, 2013 WL 2350434, 2013 U.S. Dist. LEXIS 75091 (S.D.N.Y. May 23, 2013), which involved Civilian Complaint Review Board ("CCRB") records, Defendants attempt to draw a distinction between the CCRB and the OSI. The CCRB "is a civilian oversight agency that is responsible for investigating complaints against uniform members of the [New York Police Department]." *Gonzalez*, 2013 WL 2350434, at *6, 2013 U.S. Dist. LEXIS 75091, at *19. The CCRB is "responsible for making factual findings as to whether accused officers committed misconduct." *Gonzalez*, 2013 WL 2350434, at *6, 2013 U.S. Dist. LEXIS 75091, at *20. The Court is therefore unpersuaded by Defendants' conclusory statement,

for which they provide no support, that CCRB reports are "quasi-judicial" while OSI reports are merely "investigatory" and that because of this distinction, the Court erred in allowing cross-examination with regard to the OSI report. (Dkt. No. 105-3, at 9–10.)

The Court is similarly unpersuaded by Defendants' attempt to distinguish *Rosales v. Kelly*, No. 07-cv-10554, 2011 WL 5873374, at *1, 2011 U.S. Dist. LEXIS 135083 (S.D.N.Y. Nov. 14, 2011). Defendants suggest that, unlike Defendant Hatfield, the witness in *Rosales* "had gone through the disciplinary process and settled the matter resulting in punishment." (Dkt. No. 105-3, at 10.) Therefore, Defendants argue, "there was no basis upon which to permit testimony or cross-examination regarding the 2021 OSI file." (*Id.*) But Defendants ignore the fact that the OSI report's finding of a substantiated allegation, (Dkt. No. 114-2, at 1), necessarily implies that the investigators responsible for the report found that the "allegation[s] [were] determined to have occurred based upon the preponderance of the evidence, " (Dkt. No. 118-2, at 8), despite Defendant Hatfield's assertion, "under oath" that the allegations were false, (Dkt. No. 114-2, at 5). This is sufficiently probative of Defendant Hatfield's character for truthfulness to allow cross-examination under Rule 608(b). *See Rosales*, 2011 WL 5873374, at *1, 2011 U.S. Dist. LEXIS 135083, at *3 ([T]he Court finds that the violation at issue sufficiently speaks to [the witness]'s character for untruthfulness under Federal Rule of Evidence 608(b). . . . That [the witness] engaged in the use of force against an inmate but failed to report it as required, coupled with his apparent attempt to fabricate an alternative explanation for the inmate's alleged injuries . . . suggests a dishonest character." (citing *United States v. Davis*, 183 F.3d 231, 256–57 (3d Cir. 1999))).[3]

---

[3] Defendants provide no support for their apparent contention that because Defendant Hatfield was not punished by DOCCS despite OSI's finding, (Dkt. No. 115, at 5–6), cross-examination related to the OSI report was impermissible, (Dkt. No. 105-3, at 10).

Defendants' argument that cross-examination related to the OSI report was permissible under Rule 608(b) because the underlying conduct at issue in the OSI report did not involve dishonesty, (Dkt. No. 105-3, at 10), fares no better. Defendants rely on *United States v. Horsford*, in which the Second Circuit held that where a "CCRB report indicates that the underlying conduct involved no dishonesty . . . , the report could not have been probative of [a witness]'s truthfulness or untruthfulness." 422 F. App'x 29, 30 (2d Cir. 2011) (summary order). But here, while the conduct that precipitated the OSI report—that is, the uses of force on an incarcerated individual—did not involve dishonesty, the probative impeachment value is based upon Defendant Hatfield's denial to investigators of uses of force that were determined to have occurred based upon the preponderance of the evidence and failure to issue a use-of-force report, which did involve dishonesty. *See Rosales*, 2011 WL 5873374, at *1, 2011 U.S. Dist. LEXIS 135083, at *3.[4]

### ii.     *Cedeño* Factors

Defendants next argue that, even if a basis to cross-examine Defendant Hatfield about the OSI report under Rule 608(b) existed, such cross-examination should not have been permitted under *Cedeño*. Plaintiff argues that the *Cedeño* factors "demonstrate[] that the Court's decision to admit the testimony falls within the Court's broad discretion." (Dkt. No. 114, at 13.)

In *Cedeño*, the Second Circuit held that a district court erred in its limited reliance on two factors in refusing to permit a criminal defendant to cross-examine a government witness about a prior adverse credibility finding under Rule 608(b). *See* 644 F.3d at 82–83. While the district

---

[4] Defendants' assertion that there was no determination in the OSI report that Defendant Hatfield lied, (Dkt. No. 115, at 6), is misleading. While there was no explicit credibility finding as to Defendant Hatfield, the OSI report indicated that "[Defendant] Hatfield was formally questioned under oath" and "denied assaulting" the incarcerated individual on either occasion, (Dkt. No. 114-2, at 5), but ultimately concluded that the allegations were determined to have occurred based upon the preponderance of the evidence, (*id.* at 1, 6; Dkt. No. 118-2, at 8). This necessarily implies that the OSI investigators rejected Defendant Hatfield's denials.

court had only considered (1) "whether the prior judicial finding addressed the witness's veracity in that specific case or generally" and (2) "whether the two sets of testimony involved similar subject matter," the Second Circuit concluded that the district court could also have considered (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible." *See id*. This is not a "rigid test" and there may be instances where consideration of only some of these factors is sufficient to support an evidentiary ruling. *See United States v. White*, 692 F.3d 235, 249 n.7 (2d Cir. 2012), *as amended* (Sept. 28, 2012); *see also United States v. Jackson*, No. 19-cr-356, 2020 WL 6738155, at *2, 2020 U.S. Dist. LEXIS 213988, at *4–5 (E.D.N.Y. Nov. 16, 2020) ("These factors are 'non-exhaustive,' and the district court may consider 'other factors affecting the probity and relevancy of a prior court's finding that a witness had lied.'" (first quoting *White*, 692 F.3d at 249, and then quoting *Cedeño*, 644 F.3d at 83)).

*Cedeño* does not support Defendants' claim of error. Considering some of the relevant factors here, the Court notes that the implication that Defendant Hatfield "lied in the course of an official procedure about a specific but significant matter necessarily sheds [some] light on [his] more general character for untruthfulness." *See United States v. Jackson*, 2020 WL 6738155, at *4, 2020 U.S. Dist. LEXIS 213988, at *9. While Defendant Hatfield's statements during the OSI investigation were not part of a formal judicial proceeding and Defendant Hatfield was not represented by counsel, "the investigation at issue was conducted under the auspices of an

official process and was sufficiently significant to have apprised [Defendant Hatfield] of his duty to respond truthfully." *See United States v. Barret*, No. 10-cr-809, 2012 WL 194992, at *3, 2012 U.S. Dist. LEXIS 7301, at *10 (E.D.N.Y. Jan. 23, 2012). The OSI report indicates that "[Defendant] Hatfield was formally questioned under oath," (Dkt. No. 114-2, at 5), which should have made even clearer to Defendant Hatfield the importance of responding truthfully. Moreover, the matter at issue was of central importance to the investigation into serious allegations of assault by a correction officer of an incarcerated individual. The Court also notes that the OSI report was issued slightly more than year before trial in this case. *See, e.g., White*, 692 F.3d at 250 (measuring recency based on interval between the credibility determination and the witness's testimony at trial). Finally, Defendant Hatfield's apparent motive was self-interest in avoiding "adverse financial, professional, and reputational outcomes," which are self-interests identical to those at play in this trial. *See Martinez v. City of New York*, No. 16-cv-79, 2022 WL 20042798, at *4 n.4, 2022 U.S. Dist. LEXIS 242948, at *11 n.4 (E.D.N.Y. Dec. 4, 2022); *see also United States v. Jackson*, 2020 WL 6738155, at *5, 2020 U.S. Dist. LEXIS 213988, at *16 ("[The witness]'s apparent motive for lying during the CCRB investigation was to avoid discipline and reputational damage . . . .").

### iii.   Rule 403

Next, Defendants argue that cross-examination of Defendant Hatfield related to the OSI report should have been excluded under Federal Rule of Evidence 403 because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice to Defendant Hatfield and by the need for Defendants to conduct a trial within a trial. (Dkt. No. 105-3, at 12–14.) Plaintiff argues that Defendants failed to raise an objection under Rule 403 "with any particularity"; that the Court "appropriately balanced the probative value of the OSI

testimony against the danger of prejudice under Rule 403"; and that sustained objections and limiting instructions limited any prejudice. (Dkt. No. 114, at 15–16.)

Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In this case, because the jury had to decide between the conflicting versions of the events testified to by Plaintiff and Defendant Hatfield, their characters for veracity were a central issue at trial. The Court considered the Rule 403 dangers of the evidence Plaintiff sought to admit but concluded that cross-examination about Defendant Hatfield's response to the OSI investigation was probative of his truthfulness. (Dkt. No. 105-2, at 291.)

The Court, in its discretion and sua sponte, instructed the jury multiple times that the testimony was only admitted for the purpose of assessing Defendant Hatfield's character for truthfulness. (Dkt. No. 105-2, at 340, 342, 555–57.) The Court also reminded Plaintiff on multiple occasions of the proper purpose of the testimony under Rule 608(b) and redirected Plaintiff's questioning toward that proper purpose. (*Id.* at 302–03, 305.) Thus, the danger of unfair prejudice did not substantially outweigh the highly probative value of Defendant Hatfield's cross-examination testimony on an issue of central importance to the case.

As to Defendants' argument that cross-examination of Defendant Hatfield related to the OSI report created "a trial within a trial," (Dkt. No. 105-3, at 13–14), the Court is unconvinced that permitting cross-examination regarding his truthfulness during an OSI investigation would do so. Four of the cases relied upon by Defendants involve circumstances more complex—and therefore, more likely to confuse or mislead the jury and waste time—than the circumstances

underlying the OSI report—that is, a relatively straightforward investigation into alleged uses of force that Defendant Hatfield denied. *See United States v. Stewart*, 433 F.3d 273, 313 (2d Cir. 2006); *United States v. James*, 609 F.2d 36, 46 & n.11 (2d Cir. 1979); *United States v. Kurland*, No. 20-cr-306, 2022 WL 2669897, at *6, 2022 U.S. Dist. LEXIS 121821, at *20 (E.D.N.Y. July 11, 2022); *United States v. Robinson*, No. 20-cr-415, 2021 WL 3003939, at *2, 2021 U.S. Dist. LEXIS 131249, at *5 (S.D.N.Y. July 12, 2021). Furthermore, three of the cases cited by Defendants involved findings that the evidence of issue was of limited, if any, probative value as to truthfulness. *See Kurland*, 2022 WL 2669897, at *6, 2022 U.S. Dist. LEXIS 121821, at *20; *Robinson*, 2021 WL 3003939, at *2, 2021 U.S. Dist. LEXIS 131249, at *5; *United States v. Laster*, No. 06-cr-1064, 2007 WL 2872678, at *2, 2007 U.S. Dist. LEXIS 74113, at *6 (S.D.N.Y. Sept. 28, 2007). This is starkly contrasted by the highly probative value of the cross-examination concerning Defendant Hatfield's truthfulness when his credibility was an issue of central importance to the case. Thus, the dangers of confusing or misleading the jury or wasting time did not substantially outweigh the probative value of the cross-examination of Defendant Hatfield regarding his truthfulness during the OSI investigation. Nor did the danger of unfair prejudice or any other concerns enumerated by Rule 403.

### iv.    Rule 404(b)[5]

Finally, Defendants argue that "the Court improperly permitted testimony and evidence to be admitted at trial that violated [Rule] 404." (Dkt. No. 105-3, at 16–17.) But as Plaintiff points out, (Dkt. No. 114, at 16–17), the Court explicitly rejected Plaintiff's argument that the OSI report was admissible under Rule 404(b), (Dkt. No. 105-2, at 291). In so ruling, the Court

---

[5] Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

excluded the extrinsic evidence—that is, the OSI report itself—as inadmissible under Rule 404(b) and Rule 403.

In support of their argument, Defendants point to thirteen cross-examination questions and two comments made during Plaintiff's closing statement. (Dkt. No. 105-3, at 15–16.) But in only one of those instances—which involved a question explicitly related to Defendant Hatfield's denial of allegations later found substantiated, and therefore his character for truthfulness—did the Court permit the question over an objection by Defendants. (Dkt. No. 105-2, at 303.) The Court sustained Defendants' objections in nine instances, (*id.* at 300, 302–03, 304–05, 307, 338), and reminded Plaintiff on multiple occasions of the proper purpose of the testimony under Rule 608(b), (*id.* at 302–03, 305). Finally, in five instances, Defendants did not object. (*Id.* at 296, 336–37, 536, 540); *see Krieger v. Gold Bond Bldg. Prod.*, 863 F.2d 1091, 1096 (2d Cir. 1988) ("No objection was made on grounds of admissibility[;] [a]ccordingly, [the defendant]'s present arguments that the evidence was inadmissible have been waived."); *see also Zhiwen Chen v. County of Suffolk*, 927 F. Supp. 2d 58, 70 (E.D.N.Y. 2013) (holding that the defendants' argument for a new trial, "which essentially challenge[d] the admissibility of" certain testimony, was waived because the "defendants did not object to any of [the] plaintiff's questions which they now claim were prejudicial").

As to Defendants' suggestion that Plaintiff's *questions* impermissibly veered into territory implicated by Rule 404, the Court instructed the jury that "[t]he statements, the arguments and the questions by attorneys are not evidence"; that "[o]bjections to questions are not evidence"; and that the jury "should not be influenced by the objection or the Court's ruling on it." (*Id.* at 99; *see also id.* at 499–500.) And to the extent Defendants object to comments made by Plaintiff in closing argument, Defendants failed to raise any objection during the

closing argument. The Court sua sponte raised the issue of Plaintiff's improper use of the evidence and, with Defendants' agreement, gave the jury a curative instruction reminding them of the proper purpose of the evidence. After Plaintiff's closing argument the Court noted to the parties that Plaintiff had "argued the facts of that incident, and it wasn't admissible for the truth of the facts." (*Id.* at 556). With the agreement of Defendants, the Court instructed the jury that evidence of the 2021 incident "was admissible only for the purposes of your consideration of Officer Hatfield's character for truthfulness, not for the truth of the underlying allegations." (*Id.* at 555–57; *see also id.* at 340, 342.)[6]

*      *      *

In sum, the Court did not err—let alone err substantially—in permitting cross-examination of Defendant Hatfield related to the OSI report under Rule 608(b). Accordingly, Defendants' motion for a new trial under Rule 59 on this ground is denied.

### b.    Medical Records

Defendants argue that the Court erred in admitting medical records without proper foundation and that the records' probative value was outweighed by the danger of confusing the jury. (Dkt. No. 105-3, at 17–18.) Plaintiff never intended to call the preparer of the records at trial; he argues that the medical records were properly admitted under Federal Rule of Evidence 807 and that the records were not confusing to the jury. (Dkt. No. 114, at 18–19.)[7]

Under Rule 807, "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804" if "(1) the

---

[6] The Court also instructed the jury preliminarily that "if [the Court] instruct[s] [the jury] that some item of evidence is received for a limited purpose only, [the jury] must follow that instruction." (*Id.* at 100.)

[7] Initially, Defendant sought preclusion of two sets of medical records. *See Hardy*, 654 F. Supp. 3d at 169. At trial, however, the parties agreed not to offer one of the sets of records—Dr. Im's records, Exhibit P-20. (Dkt. No. 105-2, at 481–84.) Thus, the only medical records at issue are Dr. Singh's records, Exhibit P-19. (*Id.* at 484–85, 496.)

statement is supported by sufficient guarantees of trustworthiness—after considering the totality

of circumstances under which it was made and evidence, if any, corroborating the statement;"

and "(2) it is more probative on the point for which it is offered than any other evidence that the

proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). "Rule 807 permits

admission of hearsay if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is

the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of

evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the

adverse party." *Hardy*, 654 F. Supp. 3d at 170 (quoting *United States v. Dawkins*, 999 F.3d 767,

791 (2d Cir. 2021)).

The Court discussed Rule 807 with respect to the medical records at issue in its ruling on

the parties' motions in limine, concluding that "[i]t appears that Plaintiff has established the[]

requirements [of Rule 807(a)]" but that "the Court must still decide whether the records are so

voluminous or indecipherable as to 'risk confusing the jury and wasting judicial resources.'" *See

id.* (quoting *Harris v. Donohue*, No. 15-cv-1274, 2017 WL 3638452, at *3, 2017 U.S. Dist.

LEXIS 134786, at *8 (N.D.N.Y. Aug. 23, 2017)). Thus, the Court ordered that Plaintiff "submit

the[] records in advance of trial" and instructed the parties that "[a]fter review of the records, the

Court will determine whether the records are admissible." *Id.* at 170–71. Plaintiff did so, and

prior to trial, the Court stated: "I would admit the records to the extent the records are being used

to show the plaintiff sought medical help for the injuries but I think they need to be redacted so

that they aren't filled with words that the jury's not going to understand that would require

specialized knowledge or skills to understand." (Dkt. No. 105-2, at 14.) At the Court's urging,

the parties reached agreed-upon redactions to the records to avoid presenting the jury with

medical jargon. (*Id.* at 14–15, 412–14, 479–81, 484–85, 489.) When Plaintiff introduced the records, Defendants made no objection. (*Id.* at 396–97, 496.)

As an initial matter, where a Rule 59 movant did not object to admission of evidence at trial, "a new trial is warranted only for plain error 'so serious and flagrant that it goes to the very integrity of the trial.'" *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 450 (S.D.N.Y. 2014) (quoting *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005)); *accord Encarnacion v. Spinner*, No. 15-cv-1411, 2023 WL 2785745, at *2, 2023 U.S. Dist. LEXIS 59616, at *5 (N.D.N.Y. Apr. 5, 2023). Defendants did not object to the admission of the medical records into evidence at trial, and therefore, a new trial would only be warranted for plain error.

Defendants have not argued that admission of the medical records was plain error. But even if the Court were to construe Defendants' present arguments as to the asserted inadmissibility of the medical records—an impermissible "second bite at the apple," *see Graham v. City of New York*, 128 F. Supp. 3d 681, 705 (E.D.N.Y. 2015) (quoting *Guzman v. Jay*, 303 F.R.D. 186, 192 (S.D.N.Y. 2014))—as arguments that admission of the medical records was plain error, Defendants' motion for a new trial on this ground must nevertheless be denied.

Defendants' first argument—that a proper foundation was not laid pursuant to Rules 803(4) or 803(6), (Dkt. No. 105-3, at 17)—is misplaced. As the Court indicated in its pretrial ruling on the parties' motions in limine, the medical records were admissible under Rule 807, not Rule 803, and the Court explained how the medical records likely met the requirements of Rule 807. *See Hardy*, 654 F. Supp. 3d at 170. Prior to Plaintiff's introduction of the medical records, he explained the underlying context: Plaintiff sought medical treatment from Dr. Singh almost immediately upon his release from prison and made complaints about wrist and back injuries and

migraines stemming from an assault while in prison. (Dkt. No. 105-2, at 395–96.) When Plaintiff

offered the medical records for admission into evidence, Defendants did not object. (*Id.*) The

Court is therefore unpersuaded by Defendants' first argument.

As to Defendants' second argument that the medical records' probative value was

outweighed by the danger of confusing the jury, the parties' agreement as to what was to be

redacted to avoid confusion severely undermines Defendants' position; the parties themselves

agreed on necessary redactions, and the Court was not asked to rule on any dispute as to what

redactions were appropriate to avoid confusion. (Dkt. No. 105-2, at 484–85, 490, 590.)

Defendants have failed to cite anything in the records that would have been confusing to the jury,

and, as the Court indicated in its pretrial ruling on the parties' motions in limine, the medical

records "bear on a material fact—the condition of Plaintiff's back and other physical injuries

allegedly resulting from Defendant Adams's conduct—that Defendants concede is at issue and

about which Defendants will submit their own evidence" and are "likely the most probative

evidence available to Plaintiff of that material fact," *Hardy*, 654 F. Supp. 3d at 170.[8] Thus, the

medical records' potential for confusing the jury did not substantially outweigh its probative

value under Rule 403.

Therefore, the Court did not err, let alone plainly, in admitting the medical records into

evidence. Defendants' motion for a new trial under Rule 59 on this ground is therefore denied.

---

[8] During deliberation, the jury submitted the following note: "Are there guidelines for determining compensatory damages? How do we factor an amount by looking at the medical records?" (Dkt. No. 105-2, at 584; Dkt. No. 85.) But this note does not support Defendants' argument that the medical records were confusing; rather, the note indicated that the jury was attempting to compute an award of damages, and the Court, without objection from the parties, reiterated its instruction on compensatory damages. (Dkt. No. 105-2, at 584–86.) And as Plaintiff points out, (Dkt. No. 114, at 19), Dr. Singh's medical records were not the only medical records in evidence—the record also included medical records from DOCCS, (Dkt. No. 83, at 3).

### c.    Punitive Damages

Defendants argue that the jury's awards of $45,000 in punitive damages against Defendant Adams and $90,000 in punitive damages against Defendant Hatfield are excessive and should be vacated or subject to remittitur because the awards constitute a disproportionate amount of Defendants' net worths and would subject Defendants to "financial ruin." (Dkt. No. 105-3, at 20–23.) Plaintiff argues that the award amounts should be upheld because Defendants have not "represented to the court that defendants Hatfield and Adams will not be indemnified" and that, even if Defendants are not indemnified, the awards are reasonable under the factors set forth by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). (Dkt. No. 114, at 19–24.)

In reviewing a jury's award of punitive damages, a court is guided by three factors identified by the Supreme Court in *Gore*: "(1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to the actual harm inflicted, and (3) 'the difference between this remedy and the . . . penalties authorized or imposed in comparable cases.'" *See Stampf*, 761 F.3d at 209 (quoting *Gore*, 517 U.S. at 575); *accord Patterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir. 2006); *see also Payne*, 711 F.3d at 97. But a court must also consider whether a punitive damages award will "result in the financial ruin of the defendant" or "constitute a disproportionately large result of the defendant's net worth." *See Patterson*, 440 F.3d at 122 (quoting *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992)).

With respect to Plaintiff's argument that Defendants' failure to represent that they will not be indemnified renders the jury's punitive damages awards reasonable, the Court is unpersuaded. If there were an indemnification agreement, Defendants' personal financial circumstances would not be relevant to the issue of the excessiveness of a punitive damages award. *See Patterson*, 440 F.3d at 122 (discussing cases demonstrating that a defendant's

financial circumstances are not at issue in examining punitive damages awards where there exists an indemnification agreement); *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders."). But here, there is no indication whether Defendants will be indemnified. (Dkt. No. 105-2, at 593; Dkt. No. 115, at 10–11.) Plaintiff points to the relevant indemnification statute, section 17 of the New York Public Officers Law, (Dkt. No. 114, at 21), but the applicable provision does not resolve the issue, *see* N.Y. Pub. Off. Law § 17(3)(a) ("The state shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim, or shall pay such judgment or settlement . . . provided that . . . the duty to indemnify . . . shall not arise where the injury or damage resulted from intentional wrongdoing on the part of the employee."); *see also Payne*, 711 F.3d at 95 n.7 ("Public servants are sometimes not indemnified by their employers for punitive damages."). Plaintiff has provided no support for the contention that where indemnification is possible—but not guaranteed—a defendant's personal financial circumstances are not properly considered.

Thus, the Court proceeds to examination of the *Gore* factors[9] and the personal financial circumstances Defendants

### i.    Degree of Reprehensibility

The "'degree of reprehensibility of the defendant's conduct' [i]s '[p]erhaps the most important indicium of the reasonableness of a punitive damages award.'" *Stampf*, 761 F.3d at

---

[9] Defendants do not meaningfully engage in analysis of the *Gore* factors. (Dkt. No. 115, at 11 ("With respect to the first, second, and third *Gore* factor arguments set forth by Plaintiff, . . . the jury's verdict was not supported by the evidence and the award was excessive given the lack of any tangible or proven injury to Plaintiff.").)

209 (second alteration in original) (quoting *Gore*, 517 U.S. at 575). "The Court in *Gore* identified certain aggravating factors to be considered when assessing the degree of reprehensibility: 1) whether a defendant's conduct was violent or presented a threat of violence; 2) whether a defendant acted with malice as opposed to mere negligence; and 3) whether a defendant has engaged in repeated instances of misconduct." *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (citing *Gore*, 517 U.S. at 576).

Here, the jury found that Defendant Adams "used force against [Plaintiff] maliciously for the purpose of causing harm" and that Defendant Hatfield "intentionally made contact with [Plaintiff]'s genitalia or other intimate area; that the contact with [Plaintiff]'s genitalia or other intimate area was not for a legitimate penological purpose; and that the contact with [Plaintiff's] genitalia or other intimate area was done either with the intent to gratify [Defendant Hatfield]'s sexual desire or to humiliate [Plaintiff]." (Dkt. No. 105-2, at 511, 513.) Thus, Defendant Adams's conduct "'was not an act of mere negligence; it was an assault intended to cause' [P]laintiff physical and emotional harm" and "demonstrates the extreme reprehensibility of" Defendant Adams's violent and malicious conduct. *See Anderson*, 2020 WL 6151249, at *8, 2020 U.S. Dist. LEXIS 194371, at *22 (quoting *Jackson v. Tellado*, No. 11-cv-3028, 2018 WL 4043150, at *7, 2018 U.S. Dist. LEXIS 145339, at *22 (E.D.N.Y. Aug. 24, 2018)); *see also Magalios v. Peralta*, No. 19-cv-6188, 2022 WL 407403, at *3, 2022 U.S. Dist. LEXIS 24265, at *7–8 (S.D.N.Y. Feb. 10, 2022) ("The Second Circuit has noted that a law enforcement officer's 'abuse[] of a position of respect and authority to commit malicious . . . acts of violence,' as the jury found to have happened here, is 'reprehensible' and constitutes the sort of misconduct that punitive damages awards serve to deter." (alterations in original) (quoting *DiSorbo*, 343 F.3d at 188)), *aff'd*, No. 22-519, 2023 WL 4618349, 2023 U.S. App. LEXIS 18299 (2d Cir. July 19,

22

2023). The same is true of Defendant Hatfield's intentional act of sexual abuse. *See Shepherd v. Fischer*, No. 08-cv-9297, 2018 WL 3122053, at *7, 2018 U.S. Dist. LEXIS 106682, at *25–26 (S.D.N.Y. June 26, 2018).

Thus, the first *Gore* factor supports of the jury's awards of punitive damages against Defendants Adams and Hatfield.

### ii.      Ratio of Punitive Damages to Actual Harm

The Supreme Court has not "draw[n] a mathematical bright line" between acceptable and unacceptable ratios for punitive damages, *see Gore*, 517 U.S. at 582, but "the Supreme Court has upheld a punitive damage award of 'more than 4 times the amount of compensatory damages,'" *see Patterson*, 440 F.3d at 121 (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991)). Indeed, the Supreme Court found instructive "the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages." *See Philip Morris USA v. Williams*, 549 U.S. 346, 351 (2007)*; see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003) ("Single-digit multipliers are more likely to comport with due process . . . .").

Here, the jury employed a ratio of 3:1 between punitive and compensatory damages, which is squarely within the range of acceptable ratios. Thus, the second *Gore* factor supports the jury's awards of punitive damages against Defendants Adams and Hatfield.

### iii.      Difference Between Punitive Damages and Penalties Authorized or Imposed in Comparable Cases

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Gore*, 517 U.S. at 583. "[T]he Second Circuit has further 'found it helpful in deciding whether a particular punitive award is excessive to compare it to court rulings on the same question in other cases.'"

*Jackson v. Tellado*, 2018 WL 4043150, at *7, 2018 U.S. Dist. LEXIS 145339, at *20–21

(quoting *Payne*, 711 F.3d at 104).[10] Here, the jury's award of $45,000 in punitive damages

against Defendant Adams is near the bottom of the range of generally accepted punitive damages

awards for excessive force cases. *See, e.g.*, *Magalios*, 2022 WL 407403, at *6, 2022 U.S. Dist.

LEXIS 24265, at *14–15 (collecting cases demonstrating a range of acceptable punitive damages

awards for excessive force and failure to intervene claims of $30,000 to $400,000); *Jackson v.*

*Tellado*, 2018 WL 4043150, at *9, 2018 U.S. Dist. LEXIS 145339, at *25–26 (collecting cases

and finding that "a punitive damages range of $150,000 to $400,000 is reasonable for an

excessive force claim that caused lasting injury). The jury's award of $90,000 in punitive

damages against Defendant Hatfield presents a trickier question; punitive damages for federal

claims involving more severe sexual assault and rape generally fall within the range of $150,000

to $1,000,000. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 102 (E.D.N.Y. 2020)

(collecting cases). Defendant Hatfield's conduct did not rise to that level necessary to maintain

awards of those sizes, but the jury's punitive damages award is appreciably lower than any of

those awards. And while the circumstances in *Shepherd v. Fischer*, 2018 WL 3122053, at *7,

2018 U.S. Dist. LEXIS 106682, at *27, in which the court left undisturbed the jury's punitive

damages award of $20,000, are similar to the instant case, the jury in *Shepherd* awarded only

nominal damages, 2018 WL 3122053, at *7, 2018 U.S. Dist. LEXIS 106682, at *26, whereas the

jury awarded Plaintiff $30,000 in compensatory damages against Defendant Hatfield (which are

---

[10] The Second Circuit has explained that New York's classification of conduct as criminal supports the imposition of punitive damages but "tells us little about the appropriateness of the amount of the [punitive damages] award." *See Payne*, 696 F.3d at 203–03 (noting that while the defendant police officer's assault "could support his prosecution in New York for a class 'A' misdemeanor of assault in the third degree," this was not helpful in deciding whether "the particular [punitive damages] award was excessive"). Here, the Court relies not on statutory civil or criminal penalties but instead relies on caselaw supporting the imposition of punitive damages awards for similar conduct. *See Allam v. Meyers*, 906 F. Supp. 2d 274, 293–94 (S.D.N.Y. 2012).

more fully discussed below). And in any event, the Court does not find that the jury's award of $90,000 in compensatory damages against Defendant Hatfield is so different from those imposed in comparable cases as to shock the judicial conscience.

Thus, the final *Gore* factor does not support Defendants' argument that the jury's awards of punitive damages against Defendants Adams and Hatfield must be vacated or subject to remittitur.

### iv.     Defendants' Financial Circumstances

Despite the Court's determination that the *Gore* factors counsel in favor of denying Defendants' motion with respect to the jury's awards of punitive damages, the Court must nevertheless consider whether the punitive damages awards will "result in the financial ruin of [Defendants]" or "constitute a disproportionately large percentage of [Defendants'] net worth[s]." *See Patterson*, 440 F.3d at 122 (quoting *Vasbinder*, 976 F.2d at 121). "The burden to show that financial circumstances warrant a limitation of an award for punitive damages is on the defendant . . . ." *Riascos-Hurtado v. Raines*, 422 F. Supp. 3d 595, 609 (E.D.N.Y. 2019) (citing *Patterson*, 440 F.3d at 122).

### (i)     Defendant Adams

Defendants argue that the jury's award of $45,000 in punitive damages against Defendant Adams is grossly excessive, represents a disproportionally large percentage of Defendant Adams's net worth, and would result in Defendant Adams's financial ruin. (Dkt. No. 105-3, at 22–23.)[11] But the Court disagrees with Defendants' characterization of Defendant Adams's

---

[11] Plaintiff's only argument with respect to Defendants' net worths is that "the jury was specifically and otherwise appropriately instructed to consider the defendants' financial circumstances in rendering its award" and that "[t]here is no reason to believe that the jury did not properly take heed of this instruction in determining fair and appropriate awards of punitive damages." (Dkt. No. 114, at 24.) But Plaintiff provides no support for the proposition that a court should not vacate or remit a jury's award of punitive damages that would result in a defendant's financial ruin where a jury considered evidence of the defendant's finances.

finances, which excludes incoming cashflow and certain assets but includes annual liabilities. (*Id.* at 22–23.) Defendant Adams testified that he receives $37,200 annually from his pension; has $120 in his tax savings account and $200 or $300 in his checking account; has $190,000 in a deferred compensation account; and owns approximately $37,000 worth of cryptocurrency. (Dkt. No. 105-2, at 601–02, 606.) Defendant Adams also testified that his home is worth approximately $48,000; he owns land worth approximately $11,000; he owns vehicles worth a total of about $15,000; and his wife earns approximately $65,000 annually. (*Id.* at 598–600, 606–07.) Defendant Adams testified to having debts totaling approximately $24,000 and annual liabilities totaling approximately $37,000. (*Id.* at 599–600, 602–604.) The jury's punitive damages award of $45,000 against Defendant Adams therefore represents about fifteen percent of Defendant Adam's net worth, which does not represent a disproportionately large percentage of Defendant Adams's net worth and will not likely result in Defendant Adams's financial ruin, especially considering Defendant Adams's cashflow. *See Vasbinder*, 976 F.2d at 121–22 (ordering remittitur of a punitive damages award to an amount representing approximately thirteen percent of one defendant's net worth); *see also Patterson*, 440 F.3d 104, 122 (same). Thus, the Court finds that the jury's award of $45,000 in punitive damages against Defendant Adams is not grossly excessive or a disproportionally large percentage of Defendant Adams's net worth. Accordingly, Defendants' motion under Rule 59 as to the award of punitive damages against Defendant Adams is denied.

### (ii)    Defendant Hatfield

Defendants argue that the jury's award of $90,000 in punitive damages against Defendant Hatfield is grossly excessive, represents a disproportionally large percentage of Defendant Hatfield's net worth, and would result in Defendant Hatfield's financial ruin. (Dkt. No. 105-3, at 20–21.) As with Defendant Adams, the Court disagrees with Defendants' characterization of

Defendant Hatfield's finances. (*Id.* at 20–21.) Defendant Hatfield testified that he earns $75,652 annually; has $4,000 in a checking account and $1,700 in a savings account; has $12,000 in a retirement account; and owns real property worth $90,000. (Dkt. No. 105-2, at 609, 611, 613.) Defendant Hatfield testified that has debt totaling approximately $115,000 and annual liabilities totaling approximately $32,440. (*Id.* at 609–12.) Defendant Hatfield therefore has a negative net worth but a significant stream of income. In light of Defendant Hatfield's financial circumstances, the Court finds the jury's award of $90,000 excessive: the award constitutes an incalculable proportion of Defendant Hatfield's negative net worth. The Court finds that an award of punitive damages of $30,000 against Defendant Hatfield is appropriate. This represents less than fifty percent of Defendant Hatfield's annual earnings. *See Riascos-Hurtado*, 422 F. Supp. 3d at 610 (awarding a punitive damages award of $30,000 based on the defendant's income); *Menghi v. Hart*, 745 F. Supp. 2d 89, 110 (E.D.N.Y. 2010) (ordering remittitur of $100,000 in punitive damages based on the defendant's annual salary), *aff'd*, 478 F. App'x 716 (2d Cir. 2012); *see also Vasbinder*, 976 F.2d at 121–22 (ordering remittitur of $20,000, which equaled approximately twenty-seven percent of a defendant's pre-retirement income and approximately thirty-five percent of the defendant's annual post-retirement pension).

Accordingly, Defendants' motion is granted to the extent that the Court will grant a new trial as to punitive damages against Defendant Hatfield unless Plaintiff accepts the reduction of the punitive damages award as to Defendant Hatfield to $30,000. *See Vasbinder*, 976 F.2d at 122–23 (describing remittitur procedure).

### d.    Compensatory Damages

Defendants argue that the jury's awards of $15,000 in compensatory damages against Defendant Adams and $30,000 in compensatory damages against Defendant Hatfield are excessive and should be vacated or subject to remittitur because the awards are not supported by

evidence presented at trial. (Dkt. No. 105-3, at 24–27.) Plaintiff argues that the award amounts are supported by the evidence and are consistent with damages awards in similar cases. (Dkt. No. 114, at 24–28.)

### i.   Defendant Adams

As to the jury's award of $15,000 in compensatory damages against Defendant Adams, Defendants argue that (1) there was insufficient evidence presented at trial establishing that Defendant Adams's actions were the proximate cause of any injury to Plaintiff; and (2) the jury's award was excessive in light of the severity of Plaintiff's injuries. (Dkt. No. 105-3, at 24–26.) Plaintiff argues that he demonstrated by a preponderance of the evidence that Defendant Adams—and Defendant Adams alone—assaulted him and that Plaintiff's physical and mental injuries support the jury's compensatory damages award. (Dkt. No. 114, at 25–26.)

At trial, Plaintiff testified that Defendant Adams banged Plaintiff's left hand into a concrete wall about three or four times while a handcuff was hanging from Plaintiff's left wrist and punched Plaintiff in the back of the head, back, arms, and legs. (*Id.* at 350–52.) Plaintiff testified that after the incident with Defendant Adams: his left hand and wrist were bleeding; his left wrist was swollen, sore, and throbbing; his left thumb and left index finger were in pain; he had redness and swelling on the back of his head; and he experienced aching and throbbing pain in his back that shoots down to his calf muscle. (*Id.* at 357, 362, 375, 382, 385.) Plaintiff testified that as a result of the incident with Defendant Adams, he had more frequent, longer, and more severe migraines than he had previously had; he had left wrist pain for fifteen months after the incident; and that he continued to experience numbness in his left thumb and index fingers. (*Id.* at 383, 385–86.) Plaintiff also testified that the incident with Defendant Adams resulted in anxiety and constant fear. (*Id.* at 389–90.) The treating nurse, Dominic Giovannetti, testified that his notes from treating Plaintiff indicated there were no marks to the back of Plaintiff's head, no

28

swelling, no bumps on Plaintiff's head, and three bleeding superficial scratches to Plaintiff's left hand. (*Id.* at 458.) The trial record also included as exhibits photographs of Plaintiff after the incident with Defendant Adams, sick call slips, DOCCS medical records, and medical records from Dr. Singh for the jury to consider. (Dkt. No. 82, at 2; Dkt. No. 83, at 3.)

In light of this evidence, and the record as a whole, the Court cannot find that the jury's award of compensatory damages against Defendant Adams was intrinsically excessive or was otherwise seriously erroneous or a miscarriage of justice. As an initial matter, Defendants' assertion that "Plaintiff did not present evidence that it was in fact Defendant Adams that allegedly struck him," (Dkt. No. 105-3, at 24), is plainly contradicted by the record: while Plaintiff testified that he did not see Defendant Adams strike him, he also testified that only he and Defendant Adams were in the room when Plaintiff was struck and that immediately after Plaintiff was struck, he turned and saw Defendant Adams, (Dkt. No. 105-2, at 350, 353–54, 402). Thus, Defendants' first argument is unavailing.

As to Defendants' second argument, caselaw, including the cases cited by Defendants (some of which are four decades old), supports the jury's $15,000 award of compensatory damages against Defendant Adams. *See Morales v. City of New York*, No. 99-cv-10004, 2001 WL 8594, *10, 2000 U.S. Dist. LEXIS 18711, at *30–31 (S.D.N.Y. Jan. 2, 2001) (finding that a compensatory damages award of $50,000 for § 1983 false arrest and excessive force claims does "not shock the judicial conscience" where a plaintiff's injuries were limited to "deep bruises" that required no medical treatment, and ordering remittitur of that amount); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 322, 324, 333 (2d Cir. 1986) (dismissing appeal of an order of remittitur of $25,000 for a § 1983 excessive force claim involving handcuff-related injuries); *Wheatley v. Ford*, 679 F.2d 1037, 1040 (2d Cir. 1982) (ordering remittitur of $25,000 for § 1983

claims for unlawful arrest and excessive force where injuries were "very minor" and "temporary"); *Byrnes v. Angevine*, No. 12-cv-1598, 2015 WL 3795807 at *2–3, 2015 U.S. Dist. LEXIS 78261, at *6–9 (N.D.N.Y. June 17, 2015) (ordering remittitur of $10,000 for a § 1983 excessive force claim involving "bruising, soreness, and several weeks of labored breathing"), *adopting report and recommendation*; *see also Shuford v. Cardoza*, No. 17-cv-6349, 2023 WL 2706255, at *12, 2023 U.S. Dist. LEXIS 55853, at *36 (E.D.N.Y. Mar. 30, 2023) ("[N]on-permanent physical injuries[, including bruising and lacerations that resolve on their own without ongoing treatment,] typically result in an award between $50,000 and $100,000.")

Thus, the Court finds that the jury's award of $15,000 in compensatory damages against Defendant Adams is not intrinsically excessive, seriously erroneous, or a miscarriage of justice. Defendants' motion under Rule 59 as to the award of compensatory damages against Defendant Adams is therefore denied.

### ii.     Defendant Hatfield

As to the jury's award of $30,000 in compensatory damages against Defendant Hatfield, Defendants argue that the award was excessive in light of the evidence of Plaintiff's emotional injuries. (Dkt. No. 105-3, at 26.) Plaintiff argues that his testimony of his emotional distress and caselaw support the jury's compensatory damages award against Defendant Hatfield. (Dkt. No. 114, at 27–28.)

At trial, Plaintiff testified that Defendant Hatfield handcuffed Plaintiff in his cell then told him to go to the back of the cell facing the wall. (Dkt. No. 105-2, at 366–67.) Plaintiff testified that Defendant Hatfield then entered the cell, pushed Plaintiff up against the wall, ran his hand across Plaintiff's clothed penis and testicles, and pressed his clothed erect penis against Plaintiff's back. (*Id.* at 367–70.) Plaintiff also testified that Defendant Hatfield threatened Plaintiff that worse things would happen if Plaintiff told anyone. (*Id.* at 368.) Plaintiff testified

that the incident lasted about a minute. (*Id.* at 369.) Plaintiff further testified that he did not suffer any physical injuries from the incident with Defendant Hatfield, (*id.* at 390, 392), but that immediately after the sexual abuse by Defendant Hatfield, Plaintiff felt humiliation, shame, and fear for his life, (*id.* at 371, 392). Plaintiff also testified that he was not suicidal and had not been diagnosed with anxiety or panic attacks prior to the incident with Defendant Hatfield but that after the incident, Plaintiff experienced panic attacks and sought mental health treatment from a mental health doctor. (*Id.* at 393–94.) Plaintiff also testified that he continues to suffer mental health effects from the incident with Defendant Hatfield, including suffering from anxiety, living in constant fear, and feeling withdrawn and decreased happiness. (*Id.* at 394–95.) Plaintiff testified that he subsequently requested to speak to his counselor and later sought treatment by a mental health doctor. (*Id.* at 392, 395.)

The sole case cited by Defendants in support of their argument is instructive: in *Gonzalez v. City of Schenectady*, Judge McAvoy ordered remittitur of $40,000 in a § 1983 case involving unconstitutional arrests, detainments, and strip searches that resulted in emotional distress damages such as humiliation, embarrassment, and fear of public places. *See* No. 00-cv-0824, 2002 WL 34945084, at *5, *7, 2002 U.S. Dist. LEXIS 28953, at *13, *23 (N.D.N.Y. Dec. 30, 2002). The Court does not see a distinction between Plaintiff's emotional injuries here and the injuries in *Gonzalez* for which "[t]he upper end of the scale for . . . damages suffered by [the] plaintiff is $40,000." *See id.*, 2002 WL 34945084, at *5, 2002 U.S. Dist. LEXIS 28953, at *13. Indeed, contemporary caselaw demonstrates that even "garden-variety" emotional injuries generally merit $30,000 to $125,000. *See Shuford*, 2023 WL 2706255, at *11, 2023 U.S. Dist. LEXIS 55853, at *31–32 (collecting cases).

Thus, the Court finds that the jury's award of $30,000 in compensatory damages against Defendant Hatfield is not intrinsically excessive, seriously erroneous, or a miscarriage of justice. Defendants' motion under Rule 59 as to the award of compensatory damages against Defendant Hatfield is therefore denied.

### B.      Rule 50 Motion

#### 1.      Standard of Review

Under Rule 50 of the Federal Rules of Civil Procedure, a district court may grant a motion for judgment as a matter of law against a party if "a reasonable jury would not have a legally sufficient basis to find for the party" on a certain issue and "a claim or defense . . . can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). Rule 50 "allows a district court to enter judgment as a matter of law if a jury returns a verdict unsupported by legally sufficient evidence." *Lee v. City of Troy*, 339 F.R.D. 346, 360 (N.D.N.Y. 2021). If a motion for judgment as a matter of law is made under Rule 50(a) and the court does not grant the motion before submission of the case to the jury, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion" upon its renewal after trial. Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may:[] (1) allow judgment on the verdict, if the jury returned a verdict;[] (2) order a new trial; or[] (3) direct the entry of judgment as a matter of law." *Id.*

A Rule 50(b) motion may be granted only "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (alterations in original) (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)). "In assessing the

sufficiency of evidence to support a jury verdict, [a district court] must view the record in the light most favorable to the [nonmoving] party, assuming all reasonable inferences were drawn and all credibility disputes resolved in its favor." *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004). The district court "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998); *see also Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005) (observing that, on a motion for judgment as a matter of law, the court "cannot weigh conflicting evidence, determine the credibility of witnesses, or substitute [its] judgment for that of the jury"). Although the court "should review the record as a whole," it should "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2529 (2d ed. 1995)).

### 2. Analysis

#### a. Defendant Adams

Defendants' argument as to Defendant Adams is limited to their assertion that, because Plaintiff did not testify that he saw Defendant Adams strike him and "offered no evidence upon which a jury could determine that it was Defendant Adams," Defendant Adams is entitled to judgment as a matter of law in his favor on Plaintiff's Eighth Amendment excessive force claim. (Dkt. No. 105-3, at 27.) Plaintiff argues that, while Plaintiff testified he could not see Defendant Adams strike him, Plaintiff offered sufficient other evidence to support the jury's verdict. (Dkt. No. 114, at 28–29.)

Defendants do not argue that there was insufficient evidence that force was used against Plaintiff maliciously for the purpose of causing harm in violation of the Eighth Amendment.

Rather, Defendants' sole argument is that there is insufficient evidence to establish that it was Defendant Adams who engaged in such conduct. (Dkt. No. 105-3, at 27.) The record demonstrates that Defendants' argument is without merit.

At trial, Plaintiff explained that he did not see Defendant Adams strike him because Defendant Adams was standing behind the Plaintiff. (Dkt. No. 105-2, at 353.) But Plaintiff testified that it was Defendant Adams who was standing behind him during the incident and that no one else was standing next to or in the room with Plaintiff during the incident, that immediately after the incident Plaintiff looked up and saw Defendant Adams, and that Plaintiff has no doubt that it was Defendant Adams who struck him. (*Id.* at 350, 353–54, 402.)

Giving credence to this evidence, as the Court must, *see Reeves*, 530 U.S. at 151, and assuming all reasonable inferences were drawn and all credibility disputes resolved in Plaintiff's favor, *see Advance Pharm., Inc.*, 391 F.3d at 390, Defendants' argument as to Defendant Adams fails: the basis of Defendants' motion as to Defendant Adams—that Plaintiff's testified that "he did not see who struck him"—though true, is not dispositive. "[A] jury may use a combination of factors—direct testimony, cross examination, and circumstantial evidence—to infer that a particular defendant took a particular action." *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 621 (D. Conn. 2016), *as amended* (Aug. 9, 2016); *Medina v. Donaldson*, No. 10-cv-5922, 2014 WL 1010951, at *7, 2014 U.S. Dist. LEXIS 33723, at *22–24 (E.D.N.Y. Mar. 14, 2014) (collecting cases). Here, the jury could conclude, based on Plaintiff's testimony that Defendant Adams was the only person in the room at the time Plaintiff was struck, that it was Defendant Adams who struck Plaintiff. Thus, the evidence at trial provided a legally sufficient basis for the jury's verdict against Defendant Adams, and Defendants' motion for judgment as a

34

matter of law in favor of Defendant Adams on Plaintiff's Eighth Amendment excessive force claim is therefore denied.

### b.    Defendant Hatfield

Defendants' argument as to Defendant Hatfield is that Plaintiff failed to provide evidence that any cognizable injury was proximately caused by Defendant Hatfield. (Dkt. No. 105-3, at 28.) Plaintiff argues that he presented sufficient and particular evidence of emotional distress resulting from the sexual abuse. (Dkt. No. 114, at 29.)

The Court instructed the jury that "[t]o establish a claim for sexual abuse, plaintiff must prove: That the defendant intentionally made contact with the plaintiff's genitalia or other intimate area; that the contact with the plaintiff's genitalia or other intimate area was not for a legitimate penological purpose; and that the contact with the plaintiff's genitalia or other intimate area was done either with the intent to gratify the officer's sexual desire or to humiliate the inmate." (Dkt. No. 105-2, at 513.) Defendants do not argue that Defendant Hatfield's conduct did not meet that standard; rather, Defendants argue that, although Plaintiff "testified that he felt fear and embarrassment as well as panic attacks" as a result of Defendant Hatfield's conduct, such evidence did not establish "any actual[,] . . . cognizable injury" resulting from Defendant Hatfield's conduct. (Dkt. No. 105-3, at 28.)

But Defendants provide no support whatsoever for their apparent assertion that physical injury is a necessary element of a claim for Eighth Amendment sexual abuse. It is not. *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("To show that an incident . . . was serious enough to implicate the Constitution, an inmate need not allege that there was . . . physical injury . . . ."). The Court instructed the jury that they were to "award damages only for those injuries you find that the plaintiff has proved by a preponderance of the evidence[ and] . . . only for those injuries that are a proximate result of conduct by a defendant that violated federal

law . . .based on evidence presented at trial." (Dkt. No. 105-2, at 515.) And at trial, though Plaintiff testified that he did not suffer any physical injuries from the incident with Defendant Hatfield, (*id.* at 390, 392), Plaintiff testified that immediately after the sexual abuse by Defendant Hatfield, he felt humiliation, shame, and fear for his life, (*id.* at 371, 392). Plaintiff further testified that he was not suicidal and had not been diagnosed with anxiety or panic attacks prior to the incident with Defendant Hatfield but that after the incident, Plaintiff experienced panic attacks and sought mental health treatment from a mental health doctor. (*Id.* at 393–94.) Plaintiff also testified that he continues to suffer mental health effects from the incident with Defendant Hatfield, including suffering from anxiety, living in constant fear, and feeling withdrawn and decreased happiness. (*Id.* at 394–95.)

Thus, the evidence at trial provided a legally sufficient basis for the jury's verdict against Defendant Hatfield, and Defendants' motion for judgment as a matter of law in favor of Defendant Hatfield on Plaintiff's Eighth Amendment sexual abuse claim is therefore denied.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for a new trial or to vacate or remit the jury's damages awards pursuant to Rule 59 of the Federal Rules of Civil Procedure, (Dkt. No. 105), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendants' motion for a new trial or to vacate or remit the jury's damages awards pursuant to Rule 59 of the Federal Rules of Civil Procedure, (Dkt. No. 105), is **GRANTED** to the extent that the Court will grant a new trial as to punitive damages against Defendant Hatfield unless Plaintiff accepts the reduction of the punitive damages award as to Defendant Hatfield to $30,000; and it is further

**ORDERED** that Plaintiff shall, within thirty days of the date of this decision, provide the Court with written notice of whether Plaintiff has accepted the remittitur of the punitive damages award against Defendant Hatfield; and it is further

**ORDERED** that Defendants' motion for a new trial or to vacate or remit the jury's damages awards pursuant to Rule 59 of the Federal Rules of Civil Procedure, (Dkt. No. 105), is otherwise **DENIED**; and it is further

**ORDERED** that Defendants' renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, (Dkt. No. 105), is **DENIED**; and it is further

**ORDERED** that briefing related to Plaintiff's Bill of Costs, (Dkt. No. 97), shall be in accordance with the Court's March 13, 2023 Text Order, (Dkt. No. 99).

**IT IS SO ORDERED.**

Dated: <u>February 28, 2024</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge